Jay J. Rice, Esq.
Bruce H. Nagel, Esq.
Diane E. Sammons, Esq.
Randee Matloff, Esq.
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
jrice@nagelrice.com
bnagel@nagelrice.com
dsammons@nagelrice.com
rmatloff@nagelrice.com

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN BENNETT, JR., ANGELA CAPORELLI, PETER CHRISTENSEN, JOSEPH CONTE, SCOTT CONWELL, JIM CORRIGAN, DMITRY DYLOV, SIMONE FEDERMAN, JOHN FORD, WILLIAM GALETTA, AMANDA GERTH, DAVID GORMAN, CATHERINE GIAQUINTO, RAINA GRIFFITHS, PHILLIP GUILLEN, SHERYL HAMMOND, JESSICA HECHT, ASHLEY JACKSON, JENNIFER ROACH-KING, JEFFREY C. KING, REX LEDBETTER, THOMAS MILLER, JOHN OWENS, MARY STACEY, STACEY TATE, ELIZABETH WALLACE, CHRISTOPHER WARD and RUSTY WHITE on Behalf of Themselves and All Other Persons Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation and VOLKSWAGEN, AG <br><br> Defendants. | Case No.: 15-cv-7081 <br><br><br><br> **AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs John Bennett, Jr., Angela Caparelli, Peter

Christensen, Joseph Conte, Scott Conwell, Jim Corrigan, Dmitry

Dylov, Simone Federman, John Ford, William Galetta, Amanda Gerth, David Gorman, Catherine Giaquinto, Raina Griffiths, Phillip Guillen, Sheryl Hammond, Jessica Hecht, Ashley Jackson, Jennifer Roach-King, Rex Ledbetter, Thomas Miller, John Owens, Jeffrey C. King, Mary Stacey, Stacey Tate, Elizabeth Wallace, Christopher Ward and Rusty White by and through their undersigned counsel, individually and on behalf of all others similarly situated individuals (the "Class"), as defined below, allege the following facts and claims upon personal knowledge and upon information and belief as to all other matters as follows:

## I.    IDENTIFICATION OF PARTIES

1.    The parties to this action are (i) John A. Bennett, Jr. ("Bennett"), residing in Ringoes, New Jersey; (ii) Angela Caporelli ("Caporelli") residing in Versailles, Kentucky; (iii) Peter Christensen ("Christensen") residing in Rochester, New York; (iv) Joseph Conte ("Conte") residing in Pittsgrove, New Jersey; (v) Scott Conwell ("Conwell") residing in Canaan, New Hampshire; (vi) Jim Corrigan residing in Kaymay, Texas; (vi) Dmitry Dylov ("Dylov"), residing in Niskayuna, New York (vii) Simone Federman ("Federman") residing in New York, New York; (viii) John Ford ("Ford") residing in New York, New York; (ix) William Galetta residing in Moonachie, New Jersey; (x) Amanda Gerth ("Gerth") residing in Jacksonville, Florida; (xi) David Gorman residing in South Orange, New Jersey; (xii) Catherine Giaquinto ("Giaquinto") residing in Warwick, New York; (xiii)

2

Raina Griffiths residing in Newburg, New York **(xiv)** Phillip Guillen ("Guillen") residing in Lake Grove, New York; **(xv)** Sheryl Hammond ("Hammond") residing in Louisville, Kentucky; **(xvi)** Jessica Hecht ("Hecht") residing in Frenchtown, New Jersey; **(xvii)** Ashley Jackson("Jackson") residing in White Pine, Tennessee; **(xviii)** Jennifer Roach-King ("Roach-King"); **(xix)** Jeffrey C. King ("King") residing in Cold Brook, New York; **(xx)** Rex Ledbetter ("Ledbetter") residing in Cookeville, Tennessee; **(xxi)** Thomas Miller ("Miller") residing in Corinth, New York; **(xxii)** John Owens ("Owens") residing in Garden City, New York; **(xxiii)** Mary Stacey ("Stacey") residing in Wrentham, Massachusetts; **(xxiv)** Stacey Tate ("Tate") residing in Gainesville, Florida; **(xxv)** Elizabeth Wallace ("Wallace") residing in Brielle, New Jersey; **(xxvi)** Christopher Ward ("Ward"), residing in Lanoka Harbor, New Jersey; **(xxvii)** Rusty White residing in Pasadena, Maryland; and (collectively, "Plaintiffs") and; **(xxviii)** Volkswagen AG ("Volkswagen AG") an entity with its principal place of business at 2710 Volkswagen A.G., 28436 Wolfsburg, Germany; and **(xxix)** Volkswagen Group of America, Inc., ("Volkswagen" or "Defendant") (collectively "Defendants") a corporation of the State of New Jersey, with a business address at 600 Sylvan Avenue, Englewood, New Jersey 04631. The action is being brought in New Jersey because Volkswagen is incorporated in the State; has its parts distribution center for the North East Region located here; has its Product Liaison Group located here; has its Audi Test Fleet

3

here, has its Technical Center here; has its VW/Audi/VCI Eastern Region Office here; has automobile dealers located in the State and does substantial business in the State.

## II.  JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2), because at least one class member is of diverse citizenship from the Defendant Volkswagen, a corporation incorporated in the State of New Jersey and the Defendant Volkswagen AG, a corporation with its principal place of business in Germany; there are more than 100 class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.

3.  The court has personal jurisdiction over Volkswagen because of its many and important contacts with the State of New Jersey.  Volkswagen is incorporated in the state of New Jersey; has an office and conducts substantial business in New Jersey, has had systematic and continuous contacts with New Jersey, promotes its products in New Jersey, puts its Vehicles into the stream of commerce in New Jersey and has agents and representatives that can be found in New Jersey.  Volkswagen has its parts distribution center for the North East Region located here; has its Product Liaison Group located here; has its Audi Test Fleet here, has its Technical Center here; has its VW/Audi/VCI Eastern Region Office here; has automobile dealers located in the State and does substantial business in the State.

**4**

4.   The   court   has   personal   jurisdiction   over   the Volkswagen AG in that it conducts significant and continuous business in the United States and in New Jersey including but not limited to, the following:

a) Upon information and belief corporate officers have traveled to the United States and made public statements here about the nature of the Vehicles at issue in this lawsuit and about their strategies to increase their market share and to develop these Vehicles to specifically comply with strict U.S. emissions standards;

b) Upon information and belief, it utilizes the services of U.S. law firms who practice law in New York and New Jersey.

c) Upon information and belief, American shareholders own a percentage of their stock;

d) It purposefully created and uses a website specifically designed to attract U.S. and N.J. customers and/or investors.

5.   Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this District, Defendant resides in this District and Volkswagen's conduct has injured Class Members residing in this District. Volkswagen transacts business and maintains a principal place of business within this District. Accordingly, this court has jurisdiction over this action and venue is proper in this Judicial District.

6.    The Federal Courthouse located in Newark, New Jersey is the proper vicinage for this matter because Volkswagen is incorporated in this State.

### III. <u>THE NATURE OF THE ACTION</u>

7.    Plaintiffs bring this action for actual damages, equitable relief, including restitution, injunctive relief, and disgorgement of profits, and all other relief available on behalf of themselves and all similarly-situated individuals and entities (the "Class" or "Class Members") who own or lease or who have owned or leased a 2009-2015 Volkswagen or Audi diesel-powered vehicle which contained software specifically designed to avoid and cheat EPA test standards.

8.    The United States Government, through the Environmental Protection Agency, has passed and enforced laws designed to protect United States citizens from pollution and in particular, certain chemicals and agents known to cause disease in humans. Automobile manufacturers must abide by these US laws and must adhere to EPA rules and regulations. This case arises because Defendants Volkswagen and Volkswagen AG purposefully and intentionally breached the laws of the United States and the rules and regulations of the EPA and various states by selling in the United States vehicles manufactured by its affiliates/parents Volkswagen AG and Audi AG that purposefully evaded federal and state laws. As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA: "Using a defeat device in cars

to evade clean air standards is illegal and a threat to public health." Yet, that is exactly what Volkswagen did in its 2009-20015 Volkswagen and Audi diesel vehicles.[1]

9.    As detailed in the EPA's Notice of Violation ("NOV"), sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant Volkswagen in the United States detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. But otherwise, at all other times that the vehicle is running, the emissions controls are suppressed. This results in cars that meet emissions standards in the laboratory or state testing stations, but during normal operations emit nitrogen oxides (N0x) at up to 40 times the standard allowed under United States laws and regulations. The software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

10.    NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory

---

[1] See Sept. 18, 2015 EPA News Release.

illness are at acute risk of health effects from these pollutants.

11. The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions than were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

12. According the EPA NOV, Volkswagen and Volkswagen AG installed its "defeat device" in at least the following diesel models of its vehicles (the "Vehicles"): MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3. Discovery may reveal that additional vehicle models and model years are properly included as Vehicles.

13. Volkswagen and Volkswagen AG has charged a substantial premium for the Vehicles, ironically marketed by Volkswagen and Volkswagen AG as "CleanDiesel." For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of

$18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The CleanDiesel premium for the highest trim Jetta model is substantially higher: The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

14.   These premiums occur across all of the vehicles in which Volkswagen and Volkswagen AG installed its "defeat device" for emissions testing. The table below sets forth the price premium for each base, mid-level and top-line trim for each model:

### CleanDiesel Price Premiums

| Model | Base | Mid-level | Top-line |
|---|---|---|---|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

15.   Volkswagen has been ordered by the EPA to recall the Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation. However, Volkswagen will not be able to make the Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen and Volkswagen AG is able to make Class members' Vehicles EPA compliant, Class

9

members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will necessarily result in a diminution in value of every Vehicle and it will cause owners of Vehicles to pay more for fuel while using their Vehicles.

16. As a result of Volkswagen's and Volkswagen AG's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Vehicles emit 40 times the allowed levels, owners and/or lessees of the Vehicles have suffered losses in money and/or property. Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Vehicles, they would not have purchased or leased those Vehicles, or would have paid substantially less for the Vehicles than they did. Moreover, when and if Volkswagen recalls the Vehicles and degrades the CleanDiesel engine performance in order to make the Vehicles compliant with EPA standards, Plaintiffs and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. Moreover, Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency.

17. All of the claims asserted herein arise out of Volkswagen's and Volkswagen AG's design, manufacture, warranting, advertising and selling of the Vehicle. Upon information and belief, Volkswagen and Volkswagen AG designed,

manufactured, warranted, marketed, advertised and sold the defective Vehicles to thousands of consumers throughout the United States.

18. Volkswagen and Volkswagen AG knew, at or before the time it sold the first vehicle, that the Vehicle contained a fundamental defect in its emission design. Volkswagen and Volkswagen AG had sole and exclusive possession of this knowledge.

19. Notwithstanding this knowledge, Volkswagen and Volkswagen AG made uniform and material misrepresentations and uniformly concealed material information in its marketing, advertising, and sale of the Vehicles, which Volkswagen and Volkswagen AG knew to be defective, both at the time of sale and on an ongoing basis.

20. Volkswagen and Volkswagen AG made uniform written misrepresentations to and/or uniformly concealed from Plaintiffs and everyone in the chain of distribution the defect in Plaintiffs' Vehicles, and failed to remove Plaintiffs' Vehicles from the marketplace or take adequate remedial action. Instead, Volkswagen sold and serviced Plaintiffs' Vehicle even though it knew, or was reckless in not knowing, that the Vehicles were defectively designed, would fail emissions standards, and would ultimately result in Plaintiffs' purchase of a vehicle that was less valuable than a Vehicle which would meet standards.

21. Plaintiffs assert claims on behalf of themselves and the Class Members under the various state consumer protection

statutes and similar state laws.  Plaintiffs also assert claims on behalf of themselves and the Class for fraud, fraudulent concealment/nondisclosure, breach of implied warranties, and misrepresentations under New Jersey law and similar state laws.

22.  Plaintiffs seeks actual damages, injunctive relief, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Class.

<u>IV.  PARTIES</u>

<u>A. Plaintiffs</u>

23.  Plaintiff Bennett is an individual residing in Ringoes, New Jersey. On or about March 1, 2012, he purchased a 2012 Golf TDI, VIN Number WVVBM74J1CW184007 from Open Road Volkswagen in Bridgewater, New Jersey.

24.  Plaintiff Caporelli, is an individual residing in Versailles Kentucky.  On or about February 1, 2010 she purchased a 2010 Jetta TDI, VIN Number WVWTL71K10M277633 from Carmax in Lexington, Kentucky.

25.  Plaintiff Christensen is an individual residing in Rochester, New York.  On or about May 31, 2014 he purchased a 2010 Jetta Sportwagen TDI, VIN Number 3VWTL7AJXAM70498 from Dick Ide Volkswagen in East Rochester, New York.

26.  Plaintiff Conte is an individual residing in Pittsgrove, New Jersey.  In or about June 2009, he purchased a 2009 Jetta TDI, VIN Number 3VWAL71K08M161718 from Strong Volkswagen in Salt Lake City, Utah.

27.  Plaintiff Conwell is an individual residing in Canaan, New Hampshire.  In or about 2015 he purchased a 2015 Volkswagen Passat, VIN Number 1VWBV7A39FC015077 from Autoserv Volkswagen in Tilton, New Hampshire.

28.  Plaintiff Corrigan is an individual residing in Kaymay, Texas.  On or about July 7, 2013 he purchased a 2013 Jetta TDI, VIN Number 3VWPL7AJ8DM655786 from Herb Easely Volkswagen in Wichita Falls, Texas.

29.  Plaintiff Dylov is an individual residing in Niskayuna, New York.  On or about October 5, 2010, he purchased a 2010 Jetta TDI, VIN Number 3VWHL7AJ4AM175468 from Capital Cities VW in Glenmont, New York.

30.  Plaintiff Federman is an individual residing in New York, New York. In or about June 2009, she purchased a 2010 Jetta TDI, VIN Number 3VWRL7AJ1AM019943 from Colonial Volkswagen in Westborough, Massachusetts.

31.  Plaintiff Ford is an individual residing New York, New York.  In 2014, he purchased a 2011 Jetta TDI, VIN Number 3VWPL7AJ6BM655783 from a previous owner.

32.  Plaintiff Galetta is an individual residing in Moonachie, New Jersey. On or about April 2014, he purchased a 2010 Volkswagen Jetta TDI, VIN Number WVVLL7AJ2BM037337 from East Coast Auto Mall in Englewood Cliffs, New Jersey.

33.  Plaintiff Gerth is an individual residing in Jacksonville, Florida.  In or about August 2014, she leased a 2014 Beetle, VIN Number 3VWJL7AT8EM656607 from Volkswagen of

Orange Park, Jacksonville, Florida.

34.  Plaintiff Gorman is an individual residing in South Orange, New Jersey. On or about February 28, 2013 he purchased a 2013 Jetta TDI VIN Number 3VWPL7LJXDM607383 from Douglas VW in Summit, New Jersey.

35.  Plaintiff Giaquinto is an individual residing in Warwick, New York.  On or about October 10, 2011, she purchased a 2012 Jetta TDI from Compass Volkswagen in Middletown, New York.

36.  Plaintiff Griffiths is an individual residing in Newburgh, New York.  In or about May 26, 2009, she purchased a 2009 Jetta TDI, VIN Number3VWPL71K49M343531 from Compass Volkswagen in Middletown, New York.

37.  Plaintiff Guillen is an individual residing in Lake Grove, New York.  In October 2012, he purchased a 2010 Jetta TDI, VIN Number 3VWRL7AJ1AM172869 from a Volkswagen dealership on Cardinale Way in Corona, California.

38.  Plaintiff Hammond is an individual residing in Louisville, Kentucky.  On or about September 2011, she purchased 2012 Jetta TDI, Vin Number 3VW3L7AJ7CM313713 from Neil Huffman, a car dealership in Louisville, Kentucky.

39.  Plaintiff Hecht is an individual residing in Frenchtown, New Jersey.  In or about April 2015, she purchased a 2015 Jetta TDI from Flemington New Jersey Volkswagen in Flemington, New Jersey.

40.  Plaintiff Jackson is an individual residing in White

14

Pines, Tennessee. In or about January-February 2015, she purchased a 2015 Passat TDI from Harper Volkswagen in Knoxville, Tennessee.

41.  Plaintiff Roach-King and King are individuals residing in Cold Brook, New York.  On or about June 28, 2015, they purchased a 2015 Passat from Street Ponte Volkswagen in Yorkville, New York.

42.  Plaintiff Ledbetter is an individual residing in Cookeville, Tennessee. In 2009, he purchased a 2009 Jetta TDI. VIN Number 3VWRL71K49M91479 from a previous owner who had purchased from Jim Ellis Volkswagen in Atlanta, Georgia.

43.  Plaintiff Miller is an individual residing in Corinth, New York.  On or about September 9, 2012, he purchased a 2013 Jetta TDI, 3VWLL7AJXDM205572 from RV Volkswagen in Queensbury, New York.

44.  Plaintiff Owens is an individual residing in Garden City, New York.  In 2013 he purchased a 2014 Jetta TDI, VIN Number 3VWPL7AJ5DM684937 from World Volkswagen in Neptune, New Jersey.

45.  Plaintiff Stacey is an individual residing in Wrentham, Massachusetts.  In or about August 11, 2011, she purchased a 2011 Jetta TDI, VIN Number 3VWLL7AJXBM084362 from Quirk Volkswagen in Braintree, Massachusetts.

46.  Plaintiff Tate is an individual residing in Gainesville, Florida.  In or about July 4, 2014, she purchased a 2014 Beetle TDI from Volkswagen of Gainesville, Florida.

47. Plaintiff Wallace is an individual residing in Brielle, New Jersey.  In or about December 31, 2014, she purchased a 2015 Golf TDI, VIN Number 3VW2A7AU7FM034584 from Union Volkswagen in Union, New Jersey.

48. Plaintiff Ward is an individual residing in Lanoka Harbor, New Jersey. On or about July 15, 2014, Ward purchased a 2013 Golf TDI, VIN Number WVWMM7AJODW040636 from Atlantic Volkswagen in Long Island, New York. On or about September 5, 2014, he leased a 2014 Jetta TDI, VIN Number 3VWLL7AJ3EM330754 from Toms River Volkswagen in Toms River, New Jersey.

49. Plaintiff White is an individual residing in Pasadena, Maryland.  On or about October 2013, he purchased a 2014 Passat, 1VWCN7A34EC015202 from Fitzgerald Volkswagen in Annapolis, Maryland.

50. All of the Plaintiffs still own or lease their Vehicles.  Each of these vehicles, at the time they were purchased or leased by the Plaintiffs, were equipped with an emissions control  device which caused their vehicles to get an unwarranted EPA certification and pass emissions tests, but at all other times emit 40 times the allowed level of pollutants, including NOx. The use of the cheat software by Volkswagen and Volkswagen AG has caused Plaintiffs out-of-pocket loss, future attempted repairs, and diminished value of their vehicles. Volkswagen knew about and purposefully installed software in their vehicles that suppressed the true emissions of their vehicle and failed to disclose to them the software and its

effects to Plaintiffs, so Plaintiffs purchased or leased their vehicles on the reasonable, but mistaken, belief that their vehicles complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

51.  Plaintiffs selected and ultimately purchased their vehicles, in part, because of the "CleanDiesel" system, as represented through advertisements and representations made by Volkswagen and Volkswagen AG. Specifically, prior to their purchase of the vehicle, Plaintiffs viewed advertisements regarding the CleanDiesel. The advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiffs contained any disclosure relating to the defective software or that Volkswagen and Volkswagen AG had purposefully falsified its certification of EPA compliance. Had Volkswagen and Volkswagen AG disclosed that the CleanDiesel in their vehicle actually emitted 40 times the permitted levels of pollutants, including NOx, they would not have purchased or leased their vehicle with the CleanDiesel engine, or would have paid less for the vehicles.

52.  Plaintiffs have suffered an ascertainable loss as a result of Volkswagen's and Volkswagen AG omissions and/or misrepresentations associated with the CleanDiesel engine system, including but not limited to, out-of-pocket loss and

future attempted repairs, future additional fuel costs, and diminished value of his vehicle.

53. Neither Volkswagen, Volkswagen AG nor any of its agents, dealers, or other representatives informed Plaintiffs of the existence of the "defeat device" and/or defective design of the CleanDiesel engine prior to purchase.

B.   Defendants

54. Volkswagen Group of America. Inc. ("Volkswagen") is a corporation doing business in all 50 states (including the District of Columbia) and is organized under the laws of the State of New Jersey, with its principal business address at 600 Sylvan Avenue, Englewood, New Jersey 04631. At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Vehicles under the Volkswagen and Audi brand names throughout the United States. Volkswagen and/or its agents designed, manufactured and installed the CleanDiesel engine systems in the Vehicles, which included the software designed to cheat the state and federal emission standard testing. Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Vehicles.

55. Defendant Volkswagen AG is a corporation an entity with its principal place of business at 2710 Volkswagen A.G., 28436 Wolfsburg, Germany.  Volkswagen AG, through its alter-ego and/or otherwise controlled entity, Defendant Volkswagen controlled the manufacturing process, the research and

development and the software code utilized to suppress the emission controls on the Vehicles.

56.   Defendant Volkswagen AG promotes one of its core corporate values as including product responsibility for environmental management including climate protection:

> Volkswagen takes a comprehensive view of product responsibility. Along with core aspects of quality and both active and passive vehicle safety, the strategic framework for our product development work is provided by three action areas from Volkswagen Group's environmental management system-resource conservation, climate protection and health care.[2]

57.   The New York Times in a September 23, 2015 article noted, "Volkswagen has long been known as a top-down organization where relatively minor decisions require approval from the high-rise executive office building, topped by a giant VW logo, that looms over the company's vast main factory in Wolfsburg, Germany:"[3]

> Volkswagen's command-and-control structure probably made it difficult for Mr. Winterkorn to escape responsibility, even if there was no direct culpability. Critics, including management experts and analysis, have long faulted what they say is a company culture that hampers internal communication and may discourage midlevel managers from delivering bad news.[4]

58.   Both Volkswagen AG and Volkswagen are part of a multi-national enterprise that consists of a web of companies that consist of a single economic group with common objectives. By

---

[2]http://sustainabilityreport2014.volswagenag.com/economy/product-responsibility (last visited 9/28/15)
[3]http://www.nytimes.com/2015/09/24/business/international/volkswagen-chief-martin-winterkorn-resigns-amid-emissions-scandel (last visited 9/28/15)
[4] Id.

pursing global purposes, Defendants seek to avoid liability by the disbursement of assets to numberous entities.  All entities are therefore, responsible for the acts of tis related entities.

## V. TOLLING OF THE STATUTE OF LIMITATIONS

### A.   Discovery Rule Tolling

59.  Class Members had no way of knowing about Volkswagen's deception with respect to its CleanDiesel engine system and software designed to cheat the emission standards. It took federal EPA and California Air Resources Board investigations to uncover Volkswagen's and Volkswagen AG's deception, which involved sophisticated software manipulation on Volkswagen's and Volkswagen AG's part. As reported by the *Los Angeles Times* on September 18, 2015, it took California Air Resources Board testing on a special dynamometer in a laboratory, open road testing using portable equipment, and the use of special testing devised by the Board to uncover Volkswagen's and Volkswagen AG's scheme and to detect how software on the engine's electronic control module was deceiving emissions certifications tests. Plainly, Volkswagen was intent on expressly hiding its behavior from regulators and consumers. This is the quintessential case for tolling.

60.  Within the time period of any applicable statutes of limitation, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Volkswagen and Volkswagen AG was concealing the conduct

complained of herein and misrepresenting the actual emissions qualities of Volkswagen's and Volkswagen AG's vehicles.

61.  Plaintiffs and the other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Volkswagen and Volkswagen AG did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Volkswagen had information in its possession about the existence of its sophisticated emissions scheme and that it opted to conceal that information, which was discovered by Plaintiffs only shortly before this action was filed. Nor in any event would such an investigation on the part of Plaintiffs and other Class members have disclosed that Volkswagen and Volkswagen AG valued profits over compliance with federal and state law, or the trust that Plaintiffs and other Class members had placed in its representations, or that, necessarily, Volkswagen and Volkswagen AG actively discouraged its personnel from raising or disclosing issues with regard to the true quality and quantity of the emissions, and the emissions software, of its vehicles, or of Volkswagen's and Volkswagen AG's emissions scheme.

62.  For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

**B.   Fraudulent Concealment Tolling**

63.  All applicable statutes of limitation have also been tolled by Volkswagen's and Volkswagen AG's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

64.  Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen and Volkswagen AG's falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

**C.   Estoppel**

65.  Volkswagen and Volkswagen AG were under a continuous duty to disclose to Plaintiffs and the other Class Members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

66.  Volkswagen and Volkswagen AG knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

67.  Volkswagen and Volkswagen AG was also under a continuous duty to disclose to Plaintiffs and Class members that it had engaged in the scheme complained of herein to evade

22

federal and state emissions and clean air standards, and that it systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean air.

68.  Based on the foregoing, Volkswagen and Volkswagen AG are estopped from relying on any statutes of limitations in defense of this action.

**CLASS ACTION ALLEGATIONS**

69.  Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

70.  The Class which Plaintiffs seek to represent is defined as follows: All persons or entities in the United States who are current or former owners and/or lessees of a diesel vehicle manufactured by defendant with software designed to avoid EPA and state emissions standards.  These vehicles include without limitation:  MY 2009-20015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-205 VW Golf; MY 20014-1015 VW Passat and MY 2009-2015 Audi 3.

71.  Excluded from the Class are: (i) Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendants' employees, officers, directors, agents, and representatives and their family members; (iv) the Judge and staff to whom this case is assigned, and any

member of the Judge's immediate family; (v) individuals seeking damages for personal injury, wrongful death or emotional distress.

72. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal the Class should be expanded or otherwise modified.

73. This action has been brought and may properly be maintained as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3), because there is a well-defined community of interest in the litigation in which common issues predominate and the proposed class is easily ascertainable:

a) <u>Numerosity</u>. Volkswagen and Volkswagen AG sold and distributed the Vehicles throughout the United States. Plaintiffs are informed and believe that the proposed putative Class is made-up of at least hundreds of thousands of residents nationwide and at least thousands of residents of New Jersey, New York and other states.

b) <u>Common Issues Predominate</u>. Common questions of law and fact exist as to all members of the Class and predominate over any questions which affect only individual members of the Class. The Vehicles are all the same and do not differ in any manner that is relevant to Plaintiffs' allegations, and the damage and harm caused thereby. Plaintiffs allege herein that the Vehicles all have the same inherent defect, and that they were defective when made, when they left Volkswagen's and Volkswagen AG's possession and control, and are presently

24

defective as they are now being used by Plaintiffs and Class members. There is a well-defined community of interest in the questions of law and fact involved and that affect consumers who purchased the Vehicles. These questions of law and fact predominate over questions that affect only individual class members.

The common questions of law and fact include, without limitation:

i) Whether Volkswagen and Volkswagen AG engaged in the conduct alleged herein;

ii) Whether Volkswagen and Volkswagen AG designed, advertised, marketed, distributed, leased, sold, or otherwise placed Vehicles into the stream of commerce in the United States;

iii) Whether the CleanDiesel engine system in the Vehicles contains a defect in that it does not comply with US EPA requirements;

iv) Whether the CleanDiesel engine systems in Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Vehicles;

v) Whether Volkswagen and Volkswagen AG knew about the "defeat device" and, if so, how long Volkswagen has known;

vi) Whether Volkswagen and Volkswagen AG designed, manufactured, marketed, and distributed Vehicles with a "defeat device";

vii) Whether Volkswagen's and Volkswagen AG's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

viii) Whether Plaintiffs and the other Class members overpaid for their Vehicles;

ix) Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief, and

x)  Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

These questions of law and fact predominate over questions that affect only individual Class members and there is a well-defined community of interest in the questions of law and fact involved and that affect the Class.

c)  <u>Typicality</u>.  Plaintiffs' claims are typical of the claims of the Class members in that Plaintiffs and the Class members have the same Vehicles, which share the same design, parts, materials, workmanship and manufacture and about which Defendant repeatedly made the same  uniform omissions. Therefore, the claims of Plaintiff are and will be typical of Class members.

d)  <u>The Class is Ascertainable</u>.  Plaintiffs have adequately and objectively defined the Class, as detailed above, so the Court and Class members will be able to use the definition to determine Class membership.

e) <u>Adequacy</u>.  Plaintiffs will fairly and adequately represent the interests of all Class members.  Plaintiffs have purchased a defective Vehicle and is an adequate representative of the Class as he have no interest which is adverse to the interests of absent Class members.  Plaintiffs have retained counsel with substantial experience and success in the prosecution of complex defective product and consumer protection class action litigation.

f) <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  The disposition of their claims in this case and as part of a single class action lawsuit, rather than hundreds of individual lawsuits, will benefit the parties and greatly  reduce the aggregate judicial resources that would be spent if this matter were handled as hundreds of separate lawsuits. Furthermore, given the extraordinary expenses and burden in conducting the discovery, retention and analysis by specialized experts and presentation of evidence about the inherent defects in the Vehicles, the burden of individual litigation would make it extremely difficult, if not impossible for individual members of the Class to redress the wrongs asserted herein, while an important public interest will be

served by addressing the matter as a class action.  Moreover, separate prosecution by thousands of individual members of the Class would likely establish inconsistent standards of conduct for the Defendant and result in the impairment of, and potential harm to, Class members' rights and the disposition of their interests through actions to which they were not parties. Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

### Violations of New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-2, *et seq.*)

74.  Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

75.  Plaintiffs and other members of the Class are "consumers" within the meaning of the CFA.

76.  The Vehicles are "goods" within the meaning of the CFA.

77.  At all relevant times material hereto, Volkswagen conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

78.  The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under other remedies.

79.  Volkswagen and Volkswagen AG have engaged in deceptive, unconscionable, unfair, fraudulent and misleading

commercial practices in the marketing and sale of vehicles it knew to be defective.

80.  Volkswagen and Volkswagen AG had exclusive knowledge of the Defect at the time of sale.  The Defect is latent and not something that Plaintiffs or Class members could, in the exercise of reasonable diligence, have discovered independently prior to purchase.

81.  Volkswagen and Volkswagen AG represented that its goods, merchandise or services had characteristics, uses, benefits, or quantities that they did not have, and that its goods, merchandise and services were of a particular standard, quality or grade that they were not.

82.  In its marketing and sale of the vehicle, Volkswagen and Volkswagen AG, undertook active and ongoing steps to conceal the Defects and has consciously withheld material facts from Plaintiffs and other members of the Class with respect to the Defect in the Vehicles.

83.  Plaintiffs are aware of nothing in Volkswagen's and Volkswagen AG's advertising, publicity, or marketing materials that discloses the truth about the Defect, despite Volkswagen's awareness, or reckless unawareness, of the problem.

84.  Volkswagen's and Volkswagen AG's conduct was objectively deceptive and had the capacity to deceive reasonable consumers under the circumstances.  The fact that software in the Vehicles would suppress emissions only during certifications and emission testing was a material fact that a

reasonable and/or unsophisticated consumer would attach importance to at the time of purchase. This fact would influence a reasonable consumers' choice of action during the purchase of their Vehicles.

85.  Volkswagen and Volkswagen AG intended that Plaintiffs and the other members of the Class would rely on its acts of concealment and omissions by purchasing the Vehicles at premium price rather than paying less for them or purchasing competitors' Vehicles.

86.  Had Volkswagen and Volkswagen AG disclosed all material information regarding the defect to Plaintiffs and other members of the Class, they would not have purchased the Vehicles, or they would have paid less for them.

87.  Volkswagen's and Volkswagen AG's conduct had an impact on the public interest because the acts were part of a generalized course of conduct affecting numerous consumers.

88.  As a result of the foregoing acts, omissions, and practices, Plaintiffs and other members of the Class have suffered an ascertainable loss by purchasing defective Vehicles that are unable to perform one of their essential functions of operating within federal and state emissions standards. In addition, Plaintiffs and other members of the Class have suffered ascertainable loss because they have purchased vehicles that are worth less than what they paid for.

89.   Plaintiffs are entitled to recover damages, together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

90.   Application of the CFA to all Class members, regardless of their state of residence, is appropriate as described herein and because, *inter alia*, the facts and circumstances of this case reflect numerous contacts with the State of New Jersey so as to create a state interest in applying the CFA to Volkswagen, thereby making application of New Jersey law to the entire Class appropriate.

<u>SECOND CAUSE OF ACTION</u>

<u>VIOLATIONS OF VARIOUS OTHER STATES' CONSUMER PROTECTION LAWS</u>

91.   Plaintiffs repeat, reallege and incorporates by reference each of the foregoing allegations as through fully set forth herein.

92.   Defendants had a statutory duty to refrain from unfair and deceptive trade acts or practices in its sale of vehicles and provision of services to Plaintiffs.

93.   The actions and failures to act of Defendants constitutes acts, uses or employment by defendants of unconscionable and/or unfair practices, deception, fraud, false pretenses, false promises, misrepresentations, or the concealment, suppression, or omission of material fact in connection with its sale or defective vehicles to the

Plaintiffs, the Putative Class and any Subclasses within the meaning of various state consumer protection acts.

94. The violations of the various state consumer protection acts - Alabama: the Alabama Deceptive Trade Practices Act (Ala. Code §8-19-1 et seq.); Alaska: Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. §45.50.471 et. seq.); Arizona: the Arizona Consumer Fraud Statute (Ariz. Rev. Stat. Ann. §44-1521 eq. seq.); Arkansas: the Arkansas Deceptive Trade Practices Act. (Ark. Code Ann. §4-88-101 et. seq.); California: (Cal. Civ. Code §1750, seq.; Cal. Bus. & Prof. Code. §17200 et seq.); Colorado: the Colorado Consumer Protection Act. (Colo. Rec. Stat. §6-1-101 et seq.); Connecticut: the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. §42-110a et seq.); Washington, D.C.: the Consumer Protection Procedures Act. (D.C. Code Ann. §28-3901 et seq.); Florida: the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. Ann. §501.201 et. seq. (West)) and the Florida False Advertising Statutes (Fla. Stat. Ann. §817.40 et seq. (West)); Georgia: Uniform Deceptive Trade Practices Act (Ga. Code Ann. §10-1-370 et seq.); the Fair Business Practices Act (Ga. Code Ann. §10-1-1420 et seq.); Hawaii: The Hawaii Federal Trade Commission Act (Hawaii Rev. Stat. §481A et seq.) and Uniform Deceptive Trade Practices Act (Hawaii Rev. Stat. §481A et. seq.); Idaho: the Idaho Consumer Protection Act (Idaho Code §48-601 et seq); Illinois: the Uniform Deceptive Trade Practices Act (815 ILCS §§510/1 et seq.) and Illinois Consumer Fraud and

Deceptive Business Practices Act (815 ILC §505 et seq.); Indiana: the Deceptive Consumer Sales Act (Ind. Code Ann. §24-5-0.5-1 et seq. (Burns)); Iowa: the Iowa Consumer Fraud Act (Iowa Code Ann. §714.16 (West)); Kansas: the Kansas Consumer Protection Act (Kan. Stat. Ann. §50-623 et seq.); Kentucky: the Consumer Protection Act (Ky. Rev. Stat. §367.110 et seq.); Louisiana: the Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. Ann. §51:1401 (West)); Maine: the Maine Unfair Trade Practices Act (Me. Rev. Stat. Tit. 5 §206 et seq.) and the Uniform Deceptive Trade Practices Act (Md. Com. Law Ann. §§13-101 et seq., 14-101 et seq.); Massachusetts: the Consumer Protection Act (Mass. Gen. Laws Ann. Ch. 93A); Michigan: the Michigan Consumer Protection Act (Mich. Comp. Laws Ann. §445.901 et seq.) and the Michigan Pricing and Advertising Act (Mich. Comp. Laws. Ann. §445.351 et seq.); Minnesota: the Consumer Fraud Act. (Minn. Stat. Ann. §325 F. 69); the False Statement in Advertisement Statute (Minn. Stat. Ann. §325 F. 67); the Uniform Deceptive Trade Practices Act (Minn. Stat. Ann. §325D.44); and the Unlawful Trade Practices Act (Minn. Stat. Ann. §325D.13); Mississippi: the Consumer Protection Act (Miss. Code Ann. §75-24-1 et seq) and the False Advertising Statutes (Miss. Code Ann. §97-23-3); Missouri: the Missouri Merchandising Practices Act (Mo. Rev. Stat. §407.010 et seq.); Montana: the Montana Unfair Trade Practices and Consumer Protection Act (Mont. Code Ann. §30-14-01 et seq.) and the Statutory Deceit Statute (Mont. Code Ann. §27-1-712); Nebraska: the Nebraska

33

Consumer Protection Act (Neb. Rev. Stat. §59-1601 et seq.) and the Nebraska Uniform Deceptive Trade Practices Act. (Neb. Rev. Stat. §87-301 et seq.); Nevada: the Deceptive Trade Statues (Nev. Rev. Stat. §§598.0903 et seq., 41.600 et seq.) New Hampshire: the Regulation of Business Practices for Consumer Protection (N.H. Rev. Stat. Ann. §358-A:1 et seq.) New Mexico: New Mexico Unfair Practices Act (N.M. Stat. Ann. §57-12-1 et seq.); New York: New York Consumer Protection Act (N.U. Gen. Bus. Law. §§349, 350 (Consol.)); North Carolina: North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §75-1.1 et seq.); North Dakota: Deceptive Act or Practices Statutes (N.D. Gen. Stat. §51-15-01 et seq.); Ohio: Ohio Consumer Sales Practices Act (Ohio Rev. Code Ann. §1345.01 et seq. (Baldwin)); Oklahoma: Oklahoma Consumer Protection Act (Okla. Stat. Ann. Tit. 15, §751 et seq. (West)) and the Oklahoma Deceptive Trade Practices Act (Okla. Stat. Ann. Tit. 78, §51 et seq. (West)); Oregon: the Unlawful Trade Practices Act (Or. Rev. Stat. §616.005 et seq.); Pennsylvania: Unfair Trade Practices Act and Consumer Law (Pa. Stat. Ann. Tit. 73 §201-1 et seq. (Purdon)); Rhode Island: Consumer Protection Act (R.I. Gen. Law §6-13.1-1 et seq.); South Carolina: South Carolina Unfair Trade Practices Act (S.C. Code Ann. §39-5-10 et seq.); South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws Ann. §37-24-1 et seq.); Tennessee: Tennessee Consumer Protection Act (Tenn. Code Ann. §47-18-101 et seq.); Texas: Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code Ann. §17.41 et seq.

(Vernon)); Utah: Utah Consumer Sales Practices act (Utah Code Ann. §13-11a-1 et seq.): Vermont: Vermont Consumer Fraud Statute (Vt. Stat. Ann. Tit. 9, §2451 et. seq.); Virginia: Virginia Consumer Protection Act (Va. Code 59.1-196 et seq.); Washington: Washington Consumer Protection Act (Wash. Rec. Code Ann. §19.86 et seq.) West Virginia: West Virginia Consumer Credit and Protection Act (W. Va. Code §46A-6-101 et seq.) Wisconsin: Wisconsin Fraudulent Representations Act (Wis. Stat. Ann. §100.18 et seq. (West)); Wyoming: Consumer Protection Act (Wyo. Stat. §40-12-101 et seq.); have directly, foreseeably and proximately caused damages to Plaintiffs and the Putative Class in amounts yet to be determined.

95. Defendants' actions are outrageous due to their reckless indifference to the rights of Plaintiffs and the Putative Class.

### THIRD CAUSE OF ACTION

### Breach of Implied Warranties

96. Plaintiffs incorporates the above allegations by reference as if fully set forth herein.

97. Volkswagen and Volkswagen AG sold and promoted the Vehicles, which it placed into the stream of commerce. Defendants knew or had reason to know of the specific use of which the Vehicles were purchased, and it impliedly warranted that the Vehicles were of merchantable quality and fit for such use. Specifically, Defendants knew that Plaintiffs were specifically purchasing the cars they purchased because they

were seeking "CleanDiesel" technology which would provide good fuel economy and avoid polluting the environment.

98.   Plaintiffs and Class members reasonably relied upon the expertise, skill, judgment, and knowledge of Defendants and upon its implied warranty that the Vehicles were of merchantable quality, would provide good fuel economy, reduce (not increase omissions) and were fit for such use.

99.   Through the conduct alleged herein, Volkswagen and Volkswagen AG have breached the implied warrant of fitness for a particular purpose.  The CleanDiesel Vehicle were not fit for the particular for which they were purchased by Class Members to perform.  The Class Members purchased the Vehicles for a particular purpose of being able to get superior fuel economy without polluting the environment. Volkswagen and Volkswagen AG knew that the Class Members were purchasing the Vehicles for this purpose and marketed the products for this particular purpose even named and advertised these Vehicles so that class members would expect the vehicles to perform as represented.

100. Plaintiffs and Class Members relied on Defendants' misrepresentations by purchasing the Vehicles.

101. Defendants knew or had reason to know that Plaintiffs and Class Members were influenced to purchase the Vehicles through Defendant's expertise, skill, judgment and knowledge in furnishing the products for their intended use.

102. The Vehicles were not of merchantable quality and were not fit for their particular intended use because the design

and/or manufacturing defects and deliberate software installed as alleged herein render them incapable of meeting EPA and state emissions standards while providing superior fuel economy.

103. Defendants' actions, as complained of herein, breached their implied warranty that the Vehicles were of merchantable quality as fit for such use, in violation of the Uniform Commercial Code (UCC § 2-314 and § 2-3154) and the common law of this State, as well as the common law and statutory laws of the other states.

104. Plaintiffs and the Class Members have incurred damage as described herein as a direct and proximate result of the failure of Defendant to honor its implied warranty. In particular, Plaintiffs and Class Members would not have purchased the Products had they known the truth about their defects; nor would they have suffered the collateral effects and damages associated with these defects.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranties

105. Plaintiffs incorporate the above allegations by reference as if fully set forth herein.

106. Defendants warranted that all of the Vehicles were free from defects in material or workmanship at a time when it knew that the Vehicles suffered from serious defects and could not comply with EPA and state emissions standards but nevertheless, continued to market and sell these Vehicles with this express warrant.

37

107. Defendants have breached its express warranties, as set forth above, by supplying the Vehicles in a condition which does not meet the warranty obligations undertaken by Volkswagen and Volkswagen AG and by failing to repair or replace the Vehicles.

108. Defendants have received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and Volkswagen's and Volkswagen AG's knowledge, Volkswagen and Volkswagen AG refuse to honor its warranty, even though it knows of the inherent defect in the Vehicles.

109. In addition, Volkswagen and Volkswagen AG have received, hundreds if not thousands of complaints and other notices from its customers nationwide and worldwide advising it of the Defects complained of herein.

110. Plaintiffs have given Defendants a reasonable opportunity to cure its failures with respect to its warranties, and Defendants have failed to do so.

111. Defendants have failed to provide Plaintiffs or the Class Members, as a warranty replacement, a product that conforms to the qualities and characteristics that Volkswagen expressly warranted when it sold the Vehicles to Plaintiffs and the Class.

112. As a result of Volkswagen's and Volkswagen AG's breach of warranty, Plaintiffs and the Class have suffered damage in the amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (Violations of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301 *et seq.*) – Breach of Express Written Warranty and Breach of Implied Warranty of Merchantability)

113. Plaintiffs repeat and re-allege all prior paragraphs and incorporate them as if fully set forth herein.

114. The Vehicles are "consumer products" as that term is defined under 15 U.S.C. §2301(1).

115. Plaintiffs and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3), and utilized the Vehicles for personal and household use and not for resale or commercial purposes.

116. Volkswagen and Volkswagen AG are each a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

117. Volkswagen and Volkswagen AG provided Plaintiffs and Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

118. Volkswagen and Volkswagen provided Plaintiffs and Class members with "implied warranties" as that term is defined by 15 U.S.C. § 2301(7).

119. In its capacity as a warrantor, and by the conduct described herein, any attempt by Volkswagen and Volkswagen AG to limit the express warranties in a manner that would exclude coverage for the defective emission systems and any such effort to disclaim or otherwise limit liability for its defective Vehicles is null and void as alleged above.

120. This Court has jurisdiction over this cause of action under 28 U.S.C. 1332.

121. Volkswagen and Volkswagen AG has failed to comply with its obligations under its Written Warranties, Fact Warranties and implied warranties. By failing to repair or replace the Vehicles under the Written Warranties and conform the Vehicles to the Fact Warranties and implied warranties, Volkswagen breached its warranties.

122. Plaintiffs fulfilled their obligations under the warranties.

123. As a direct and proximate result of Defendants' breach of express and implied warranties, Plaintiffs and Class members have suffered injury in that their Vehicles are worth less than what they paid for them and Plaintiffs and Class members are entitled to damages, equitable relief, attorneys' fees and costs pursuant to 15 U.S.C. §2310.

<u>SIXTH CAUSE OF ACTION</u>

<u>(Fraud by Concealment)</u>

124. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

125. This claim is brought on behalf of the Class.

126. Volkswagen and Volkswagen AG intentionally concealed and suppressed material facts concerning the quality of the Vehicles. As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen and Volkswagen AG engaged in a secret scheme to evade federal and state vehicle emissions standards by installing software designed to conceal its vehicles emissions

of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's and Volkswagen AG's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

127. Plaintiffs and Class members reasonably relied upon Volkswagen's and Volkswagen AG's false representations. They had no way of knowing that Volkswagen's and Volkswagen AG's representations were false and gravely misleading. As alleged herein, Volkswagen and Volkswagen AG employed extremely sophisticated methods of deception. Plaintiffs and Class members did not, and could not, unravel Volkswagen's and Volkswagen AG's deception on their own.

128. Volkswagen and Volkswagen AG concealed and suppressed material facts concerning compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales above the trust that Plaintiffs and Class members placed in its representations.

129. Necessarily, Volkswagen and Volkswagen AG also took steps to ensure that its employees did not reveal the details

of its scheme to regulators or consumers, including Plaintiffs and Class members. Volkswagen and Volkswagen AG did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen and Volkswagen AG are reputable manufacturers that comply with applicable law, including federal and state clean air law and emissions regulations, and that their vehicles likewise comply with applicable law and regulations. Volkswagen's and Volkswagen AG's false representations were material to consumers, both because they concerned the quality of the vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles. As Volkswagen and Volkswagen AG well knew, its customers, including Plaintiffs and Class members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars, and they paid accordingly.

130. Volkswagen and Volkswagen AG had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen and Volkswagen AG, because Volkswagen and Volkswagen AG had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen and Volkswagen AG knew the facts were not known to or reasonably discoverable by Plaintiffs or Class members.

Volkswagen and Volkswagen AG also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as clean diesel cars, or cars with clean diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiffs, Volkswagen had the duty to disclose not just the partial truth, but the entire truth. These omitted and concealed facts were material because they directly impact the value of the Vehicles purchased or leased by Plaintiffs and Class members. Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass. Volkswagen represented to Plaintiffs and Class members that they were purchasing clean diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen and Volkswagen AG had subverted the testing process thoroughly.

131. Volkswagen and Volkswagen AG actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen and Volkswagen AG money, and it did so at the expense of Plaintiffs and Class members.

132. On information and belief, Volkswagen and Volkswagen AG has still not made full and adequate disclosures, and continues to defraud Plaintiffs and Class members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions scheme.

133. Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen and Volkswagen AG, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' and Class Members actions were justified. Volkswagen and Volkswagen AG were in exclusive control of the material facts, and such facts were not known to the public, Plaintiffs, or Class members.

134. Because of the concealment and/or suppression of the facts, Plaintiffs and Class members have sustained damage

because they own vehicles that are diminished in value as a result of Volkswagen's  and Volkswagen AG's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's and Volkswagen AG's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's and Volkswagen AG corporate policies. Had Plaintiffs and Class members been aware of Volkswagen's and Volkswagen AG's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiffs and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

135. The value of Plaintiffs' and Class Members' vehicles has diminished as a result of Volkswagen's and Volkswagen AG's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiffs' and Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

136. Accordingly, Volkswagen and Volkswagen AG are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

137. Volkswagen's and Volkswagen AG's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the representations that Volkswagen made to them, in order to enrich Volkswagen and Volkswagen AG.

138. Volkswagen and Volkswagen AG have a prior history of installing "defeat devices" on their vehicles to evade US emissions testing. In 1973, the EPA fined Volkswagen $120,000.00 after finding that it had installed devised specifically to shut down a vehicle's pollution control system.[5]

139.   Volkswagen's and Volkswagen AG conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

140. Plaintiffs plead this count pursuant to the law of Virginia, where Volkswagen has its American headquarters, on behalf of all members of the Class. As necessary, and in the alternative, Plaintiffs stand ready to plead sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than Virginia or New Jersey.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant for the following:

---

[5] New York Times, Volkswagen Test Rigging Follows a Long Auto Industry Pattern (September 23, 2015)

1.    An order certifying Plaintiffs' claims as a class action, appointing John Bennett, Jr., Angela Caporelli, Peter Christensen, Joseph Conte, Scott Conwell, Jim Corrigan, Dimitri Dylov, Simone Federman, John Ford, William Galetta, Amanda Gerth, David Gorman, Catherine Giaquinto, Raina Griffiths, Phillip Guillen, Sheryl Hammond, Jessica Hecht, Ashley Jackson, Jennifer Roach-King, Jeffrey C. King, Rex Ledbetter, Thomas Miller, John Owens, Mary Stacey, Stacey Tate, Elizabeth Wallace, Christopher Ward, and Rusty White as representative Plaintiffs and appointing their counsel, Nagel Rice, LLP, to be counsel for the Class;

2.    A constructive trust on and restitution of all amounts obtained by Defendants as a result of its violation of the statutory claims plead above, and the Defendants' misconduct, together with interest thereon from the date of payment, to the victims of such violations;

3.    All recoverable compensatory, punitive, and other damages sustained by Plaintiffs and Class members, including mandatory treble damages pursuant to the Consumer Fraud Act;

4.    Actual and/or statutory damages for injuries suffered by Plaintiffs and Class members in the maximum amount permitted by applicable law;

5.    An injunction (1) enjoining Defendants' wrongful, unlawful, fraudulent, deceptive, and unfair conduct as set forth above; (2) directing Defendants to engage in a corrective notice campaign; (3) directing Defendants to repair or replace the Vehicles or refund to Plaintiffs and Class members the funds paid to Defendants for the defective Vehicles; (4) provide an

**47**

open source code for the Vehicles' emission suppression software;

6.   Statutory pre-judgment and post-judgment interest on any amounts;

7.   Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

8.   Such other relief as the Court may deem just and proper

## XI.   DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all causes of action so triable.

By:   /s/ *Jay J. Rice*

JAY J. RICE
Bruce H. Nagel
Diane E. Sammons
Randee M. Matloff
NAGEL RICE, LLP
103 Eisenhower Parkway
Roseland, New Jersey 07068
973-618-0400
jrice@nagelrice.com
dsammons@nagelrice.com

Dated:   September 30, 2015